562

IN THE MATTER OF THE REVIEW OF CHAPTER 482, OREGON
LAWS, 1961, RELATING TO THE APPORTIONMENT
OF SENATORS AND REPRESENTATIVES.
McKINLEY ET AL
364 P. 2d 1004

*Vernon Cook*, Gresham, argued the cause and sub-

mitted a brief for petitioners Charles McKinley, Donald G. Balmer and Howard E. Dean. With him on the brief were Dirk D. Snel and Reuben Lenske, Portland.

*Edward N. Fadeley*, Eugene, argued the cause and submitted a brief in propria persona.

*Wm. S. McLennan*, Portland, argued the cause and submitted a brief for petitioner Eleanor P. Kafoury.

Reuben Lenske, Portland, submitted a brief amicus curiae pro se.

*Edwin J. Peterson*, Portland, and *Douglas R. Spencer*, Eugene, argued the cause and submitted a brief amicus curiae in support of Chapter 482, Oregon Laws 1961. With them on the brief were Clay Myers, Portland; Robert E. Jones, Portland; Ken Maher, Portland; George Annala, Hood River; F. F. Montgomery, Eugene, and Victor Atiyeh, Portland.

Robert Y. Thornton, Attorney General, Salem, submitted a brief amicus curiae in opposition. With him on the brief was Louis S. Bonney, Assistant Attorney General, Salem.

O'CONNELL, J.

This is an original proceeding in which the petitioners seek a judgment declaring unconstitutional Chapter 482, Oregon Laws 1961, which purports to reapportion representation in the Oregon legislative assembly.[1]

The provisions for the apportionment of senators

---

[1] Original jurisdiction is conferred upon this court by virtue of Article IV, § 6 (2) (a), which reads as follows: "Original jurisdiction hereby is vested in the Supreme Court upon the petition of any qualified elector of the state filed with the Clerk of the Supreme Court prior to September 1 of the year in which the Legislative Assembly enacts a reapportionment measure, to review any measure so enacted."

and representatives within this state are contained in Article IV, § 6 of the Oregon Constitution. The method for determining the number of senators and representatives for each county or district is set forth in subsection (1) of Article IV, § 6:

"(1) The number of senators and representatives shall, at the session next following an enumeration of the inhabitants by the United States government, be fixed by law and apportioned among the several counties according to the population in each. The ratio of senators and representatives, respectively, shall be determined by dividing the total population of the state by the number of senators and by the number of representatives. The number of senators and representatives for each county or district shall be determined by dividing the total population of such county or district by such respective ratios; and when a fraction exceeding one-half results from such division, such county or district shall be entitled to a member for such fraction. In case any county does not have the requisite population to entitle it to a member, then such county shall be attached to some adjoining county or counties for senatorial or representative purposes."

The total population of Oregon according to the official federal census of 1960, as reported on November 29, 1960, was 1,768,687. The application of the constitutional formula to this figure produces a senatorial ratio of 58,956 and a representative ratio of 29,478.[2] The number of senators and representatives to which each county or district is entitled is obtained by dividing, respectively, 58,956 and 29,478 into the population of the county or district. This computation when applied to each of the counties (as distinguished

[2] The senatorial ratio, based upon a senate consisting of 30 members, results from dividing 1,768,687 by 30. The representative ratio, based on a house of 60 members, results from dividing 1,768,687 by 60.

from the senatorial or representative *districts*) yields
the following result:

| County | 1960 Population | Population Divided by | |
| --- | --- | --- | --- |
| | | Senatorial Ratio | Representative Ratio |
| Baker | 17,295 | .293 | .587 |
| Benton | 39,165 | .664 | 1.329 |
| Clackamas | 113,038 | 1.917 | 3.835 |
| Clatsop | 27,380 | .464 | .929 |
| Columbia | 22,379 | .380 | .759 |
| Coos | 54,955 | .932 | 1.864 |
| Crook | 9,430 | .160 | .320 |
| Curry | 13,983 | .237 | .475 |
| Deschutes | 23,100 | .392 | .784 |
| Douglas | 68,458 | 1.161 | 2.322 |
| Gilliam | 3,069 | .052 | .104 |
| Grant | 7,726 | .131 | .262 |
| Harney | 6,744 | .114 | .229 |
| Hood River | 13,395 | .227 | .454 |
| Jackson | 73,962 | 1.255 | 2.509 |
| Jefferson | 7,130 | .121 | .242 |
| Josephine | 29,917 | .507 | 1.015 |
| Klamath | 47,475 | .805 | 1.611 |
| Lake | 7,158 | .121 | .243 |
| Lane | 162,890 | 2.763 | 5.526 |
| Lincoln | 24,635 | .418 | .836 |
| Linn | 58,867 | .998 | 1.997 |
| Malheur | 22,764 | .386 | .772 |
| Marion | 120,888 | 2.050 | 4.101 |
| Morrow | 4,871 | .083 | .165 |
| Multnomah | 522,813 | 8.868 | 17.736 |
| Polk | 26,523 | .450 | .900 |
| Sherman | 2,446 | .041 | .083 |
| Tillamook | 18,955 | .322 | .643 |
| Umatilla | 44,352 | .752 | 1.505 |
| Union | 18,180 | .308 | .617 |
| Wallowa | 7,102 | .120 | .241 |
| Wasco | 20,205 | .343 | .685 |
| Washington | 92,237 | 1.565 | 3.129 |
| Wheeler | 2,722 | .046 | .092 |
| Yamhill | 32,478 | .551 | 1.102 |

·From the foregoing tabulation it is apparent that, on a county basis, if effect is given to the constitutional provision awarding a senator and a representative to a county or district "when a fraction exceeding one-half results from such division," 14 counties would be entitled to 27 senators and 24 counties would be entitled to 61 representatives. Thus, such an apportionment would exceed the constitutional maximum set by Article IV, § 2 which contains the proviso that "the Senate shall never exceed thirty, and the House of Representatives sixty members." It is to be noted, however, that this result could be obviated by combining, in some instances, two or more counties into a single district.⑧

It appears from assertions in the briefs that the proponents of H. B. 1665, which eventuated in Chapter 482, Oregon Laws 1961, considered it impossible to comply strictly with the constitutional formula calling for a fractional entitlement and that it was, therefore, necessary to adjust the method of allocating senators and representatives in order to produce a valid apportionment. Under Chapter 482 the apportionment of senatorial districts was as follows:

| Districts | Counties | District Ratio | No. of Senators |
|---|---|---|---|
| 1st | Marion | 2.050 | 2 |
| 2nd | Linn | .998 | 1 |
| 3rd | Lane | 2.763 | 2 |
| 4th | Douglas | 1.161 | 1 |
| 5th | Jackson | 1.255 | 1 |
| 6th | Josephine | .507 | 1 |
| 7th | Coos Curry | 1.169 | 1 |

⑧ For example, Yamhill county with a senatorial ratio of .551 which, if considered alone would entitle it to one senator, could be combined with Washington county having a senatorial ratio of 1.565 producing a combined ratio of 2.116 and eliminating one senatorial seat.

| Districts | Counties | District Ratio | No. of Senators |
|---|---|---|---|
| 8th | Yamhill | .551 | 1 |
| 9th | Washington | 1.565 | 1 |
| 10th | Tillamook Washington | 1.887 | 1 |
| 11th | Clackamas | 1.917 | 2 |
| 12th | Multnomah | 8.868 | 7 |
| 13th | Benton | .664 | 1 |
| 14th | Clatsop Columbia | .844 | 1 |
| 15th | Lincoln Polk | .868 | 1 |
| 16th | Gilliam Hood River Morrow Sherman Wasco Wheeler | .792 | 1 |
| 17th | Umatilla | .752 | 1 |
| 18th | Baker Union Wallowa | .721 | 1 |
| 19th | Grant Harney Malheur | .631 | 1 |
| 20th | Crook Deschutes Jefferson Lake | .794 | 1 |
| 21st | Klamath | .805 | 1 |

The apportionment of representatives among the representative districts was as follows:

| Districts | Counties | District Ratio | No. of Representatives |
|---|---|---|---|
| 1st | Clatsop | .929 | 1 |
| 2nd | Columbia | .759 | 1 |
| 3rd | Tillamook | .643 | 1 |

| Districts | Counties | District Ratio | No. of Representatives |
|---|---|---|---|
| 4th | Washington | 3.129 | 3 |
| 5th | Yamhill | 1.102 | 1 |
| 6th | Multnomah | 17.736 | 16 |
| 7th | Clackamas | 3.835 | 4 |
| 8th | Lincoln | .836 | 1 |
| 9th | Polk | .900 | 1 |
| 10th | Benton | 1.329 | 1 |
| 11th | Marion | 4.101 | 4 |
| 12th | Linn | 1.997 | 2 |
| 13th | Lane | 5.526 | 5 |
| 14th | Douglas | 2.322 | 2 |
| 15th | Coos | 1.864 | 1 |
| 16th | Coos Curry | 2.339 | 1 |
| 17th | Josephine | 1.015 | 1 |
| 18th | Jackson | 2.509 | 2 |
| 19th | Gilliam Hood River Morrow Sherman Wasco Wheeler | 1.583 | 2 |
| 20th | Umatilla | 1.505 | 2 |
| 21st | Union Wallowa | .858 | 1 |
| 22nd | Crook Jefferson | .562 | 1 |
| 23rd | Baker | .587 | 1 |
| 24th | Deschutes | .784 | 1 |
| 25th | Grant Harney Lake | .734 | 1 |
| 26th | Malheur | .772 | 1 |
| 27th | Klamath | 1.611 | 2 |

It is apparent that, under the district division made by Chapter 482, if each of the districts having a major fraction were allotted a senator and a representative the number of each class would exceed the constitutional maximum. Thus, it is seen that under Chapter 482 the division resulted in 18 whole numbers and 17 major fractions, the combination of which would call for 35 senators. If this were the inevitable result of the application of the constitutional formula some method of reducing the number of senatorial seats would be required to avoid exceeding the constitutional maximum of 30 senators. Similarly, the maximum for representatives would be exceeded.

It appears that the proponents of H. B. 1665 drafted the apportionment plan embodied in Chapter 482 upon the foregoing assumption and, to effect the reduction required by the constitution, first allocated to the districts consisting of a small county or combination of small counties a senator or representative for each whole number and for each major fraction. As a consequence of this allocation the number of available seats was reduced to the point where it became impossible to allot to the larger counties (such as Multnomah and Lane) the full number of seats called for by the strict application of the ratios. Petitioners contend that whether or not this was the premise upon which the creators of H. B. 1665 proceeded, the apportionment made in Chapter 482 deprived the 12th senatorial district (Multnomah county) of two senators and the 3rd senatorial district (Lane county) of one senator. And it is contended that the 6th representative district (Multnomah county) was deprived of two representatives and that the 13th representative district (Lane county) and the 18th representative district (Jackson county) were each deprived of one representative.

■ It will be noted that in apportioning only seven senators to the 12th senatorial district (Multnomah county) the method adopted in Chapter 482 results not only in eliminating from the final ratio a major fraction but a whole number as well. Thus, through the application of the constitutional formula the 12th senatorial district had a ratio of 8.868, entitling the district to nine senators if effect is given to the major fraction. Had the major fraction alone been disregarded the district would have been allotted eight senators. Chapter 482 allotted only seven senators to the 12th senatorial district. Conceding, without deciding at this point, that the constitution could be construed to permit the legislative assembly to disregard the major fraction under the circumstances of this case, it is impossible for us to conceive of a reasonable interpretation of Article IV, § 6 which would permit the legislative assembly to subtract a whole number from the quotient resulting from the application of the constitutional formula for determining representation in the state senate. The constitution clearly demands that "the number of senators and representatives for each county or district shall be determined by dividing the total population of such county or district by such respective ratios," (i.e., the ratios determined by dividing the total population of the state by the number of senators and by the number of representatives). The constitution then provides for the eventuality that the ratio may include a major fraction. The purpose of this subsection is clear; representation is to be based upon the population ratio. The ratio is to be determined arithmetically by the simple process of division. The constitution makes no mention of the use of any other factor in making the apportionment. The constitution

does not expressly or impliedly empower the legislature to adjust the representation among the districts in the state by disregarding the results of the arithmetic process called for by Article IV. Through its authority to designate the senatorial and representative districts and, as we shall see, through its power to adjust the major fractions, the legislature does have the power to make some adjustment in representation, but it does not have the power to adjust the ratios to the extent of disregarding a whole number once the districts have been established and the division made upon the basis of such districts. We hold, therefore, that the elimination of a whole number from the ratio for the 12th senatorial district in itself renders unconstitutional the apportionment plan contained in Chapter 482.

In resting our decision on the foregoing ground we have assumed, arguendo, that there could be circumstances warranting the elimination of a major fraction in an apportionment plan. We shall now consider the validity of that assumption.

It is not unlikely that the drafters of Article IV assumed that by recognizing major fractions as whole numbers and disregarding minor fractions the total of all of the ratios would equal the number which was being divided, i.e., that the sum of the parts thus adjusted would equal the whole. Whether or not this was the assumption, it is clear that the constitutional formula for apportionment can produce whole numbers and major fractions exceeding the number (30 and 60 in the present case) which the ratios purport to apportion precisely. This is illustrated in the present case where the total number of whole numbers and major fractions is the equivalent of 61 seats for the house. It is possible to conceive of situations in

which the population is so distributed as to create ratios greatly exceeding the number of seats which are to be allocated. Thus it would be possible for 30 counties to have major fractions as their ratios and the remaining six counties to have ratios expressed in whole numbers or whole numbers and fractions. With a slightly different distribution of the population the total of all the ratios could equal far less than the number of allocable seats. This would be the case, for example, if 30 counties had minor fraction ratios and the remaining six counties had ratios in whole numbers with or without fractions. The problem presented by an excess of major fractions would be accentuated where districts containing only minor fraction ratios were combined to create a ratio consisting of a major fraction.

Some of the petitioners argue that the difficulties presented by an excess of major fractions can be obviated by the creation of districts through the combination of counties in such a way as to reduce the number of major fractions and thus bring the total of whole numbers and major fractions within the constitutional maximum. For example, if two counties, each with a ratio of .625 were combined into one district the district would be entitled to one senator, whereas, if the two counties were not combined each would be entitled to one senator. It is argued that since the legislature can, by the creation of such districts, work out the formula in Article IV to avoid the creation of an excess of major fractions, it must do so and that it cannot disregard a major fraction if it appears in the final ratio. The argument loses sight of the fact that whether the legislature indirectly rids a county ratio of a major fraction by combining it with another county, as illustrated above, or directly

by disregarding the major fraction without districting, the purpose, and only purpose for combining the counties into districts *in this circumstance* is to adjust the constitutional formula so that it can be made to work.

It is evident, then, that any apportionment plan submitted to us must be tested in light of the inherent deficiencies of the constitutional formula. Whatever solution is suggested, it is necessary to make some adjustment of the major fractions. In judging whether the adjustment is reasonable it must be borne in mind that the major fractions which arise out of the application of the constitutional formula have little, if any, relation to whole numbers involved in the division of the population into units of representation. Lacking this relationship the major fractions become, in effect, a mathematical excrescence in the apportionment process and the creator of the apportionment plan must dispose of that excrescence in some way.

■■ In attempting to make workable an otherwise unworkable plan the legislature has the discretion to make any adjustment in the treatment of major fractions which is rational and consistent with the fundamental constitutional requirement that apportionment be made according to the population of the state in each county or district. Thus, it would not be unreasonable to give preference to the major fractions which most closely approximate a whole number. Or it would not be unreasonable to ignore a major fraction from the ratio of a more populous county or district having one or more whole numbers plus a major fraction and assign a member to a less populous county or district having only a major fraction. Other adjustments consistent with the principle of apportionment

among the several counties according to population would be valid. However, the adjustment of the ratios can go no further than that which is necessary to obviate the problem created by the existence of major fractions in the ratios. As we have already stated, the constitution cannot reasonably be interpreted to permit the elimination of a whole number from a county or district ratio. Consequently, Chapter 482 is unconstitutional. The Secretary of State is directed to draft a reapportionment of the senators and representatives in compliance with subsection (1) of § 6, Article IV and return the draft to this Court by October 1, 1961. The mandate shall issue forthwith.